UNITED STATES COURT OF INTERNATIONAL TRADE

---------------------------------------------------------------------- X

| | | |
|---|---|---|
| **MAPLE LEAF MARKETING, INC.** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 20-cv-03839 |
| | : | |
| **THE UNITED STATES,** | : | |
| | : | |
| Defendant. | : | |

---------------------------------------------------------------------- X

## COMPLAINT

Plaintiff, MAPLE LEAF MARKETING, INC., by and through its undersigned counsel, for its Complaint in this matter against Defendant, the UNITED STATES, does hereby state, plead, and allege as follows:

## CAUSE OF ACTION

1. This action is commenced to challenge U.S. Customs and Border Protection's ("CBP" or "Customs") denial of plaintiff's, Maple Leaf Marketing, Inc.'s ("MLM"), protest contesting *inter alia* the assessment and collection:

    a. of duties on certain entries of boronized steel tubing which were returned to the United States after having been exported to Canada for "repair and alteration" and which qualified for duty free entry under subheading 9802.00.50 of the Harmonized Tariff Schedule of the United States ("HTSUS"); and

    b. of duties imposed under section 232 of the Trade Expansion Act of 1962, Pub. L. No. 87-794, 76 Stat. 872, 877, codified as amended at 19 U.S.C. § 1862 ("Section 232"), on U.S.-originating goods.

## JURISDICTION

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

3. All liquidated duties, taxes, and fees were paid prior to the commencement of this action.

## TIMELINESS

4. A civil action under 28 U.S.C. § 1581(a) must be commenced "within one hundred and eighty days after the date of mailing of notice of denial of a protest under section 515(a)" of the Tariff Act of 1930. 28 U.S.C. § 2636(a)(1).

5. CBP denied plaintiff's protest on October 30, 2020. Plaintiff timely commenced this action by filing a summons and complaint "within one hundred and eighty days after the date of mailing of notice of denial of a protest under section 515(a)" of the Tariff Act of 1930. 28 U.S.C. § 2636(a)(1).

## PARTIES

6. Plaintiff Maple Leaf Marketing, Inc. ("MLM") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at 401 West Texas Ave., Suite 917, Midland, Texas 79701. At times relevant to this action, MLM was the exclusive U.S. importer of the subject boronized steel tubing in the lower 48 States. MLM is the real party in interest in this action.

7. Defendant the United States is the Federal defendant. The complained-of action was taken by its agency U.S. Customs and Border Protection ("CBP" or "Customs"), a component of the Department of Homeland Security.

## STATEMENT OF FACTS

8. The imported merchandise at issue consists of specially hardened and boronized Range 2 (28' – 32') American Petroleum Institute ("API") 5CT J-55 *seamless* and *electric resistance welded* ("ERW") steel tubing product known as "EndurAlloy," which is used as oil country tubular goods ("OCTG") in the U.S. oil and gas industry.

9. "EndurAlloy" is the brand-name for a boronizing treatment performed on OCTG which hardens the inside diameter of certain steel tubing and steel connections.

10. The subject merchandise at issue here are certain diameters of EndurAlloy-branded Range 2 API 5CT J-55 seamless and ERW steel tubing, which Plaintiff MLM imported into the United States in 2018 and 2019.

11. The subject steel tubing is U.S.-origin steel which was altered in Canada by MLM's vendor, Endurance Technologies Inc. ("ETI"), of Alberta, Canada, in a manner qualifying it for treatment under subheading 9802.00.50, HTSUS.

ETI's Alteration of Steel Tubing

12. ETI sources finished Range 2 API 5CT J-55 steel tubing from U.S. vendors.

13. ETI's U.S. vendors either (i) wholly manufacture the steel tubing through a melt-and-pour process; or (ii) import into the U.S. "green tubes" from foreign producers and then substantially transform the "green tubes" into API 5CT J-55 steel tubing suitable for use in OCTG applications.

14. The U.S. processing of the "green tubes" into OCTG involves various manufacturing processes including end upsetting, threading, and heat normalizing.

15. "Green tubes" do not meet the criteria for finished Range 2 API 5CT J-55 steel tubing. However, after ETI's vendors' processing of the "green tubes" in the U.S., the tubes meet

the specific criteria for, and are commercially considered, finished Range 2 API 5CT J-55 steel tubing, which is a finished article of commerce, suitable for use as OCTG.

16. Following ETI's vendors' processing, the finished Range 2 API 5CT J-55 steel tubing is exported to Canada where ETI performs boronizing alteration treatments on the finished tubing.

17. ETI's EndurAlloy processing enhances corrosion resistance of the internal diameter of the J-55 seamless or ERW steel tubing to protect against rotating or stroking rod wear, erosion caused by abrasive fluids, corrosion, and other factors that can cause premature tubing failures in challenging drilling environments. However, ETI's Canadian boronizing operations did not create a new article of commerce, distinct from that which was exported. The Canadian alterations merely advanced the value and improved the condition of the finished Range 2 API 5CT J-55 steel tubing.

18. To accomplish these enhancements, a proprietary blend of chemicals is added throughout the length of the finished Range 2 API 5CT J-55 steel tubing. When heated to high temperatures, the chemicals enter a gas phase, and corrosion-resistant boron is deposited into the inner surface of the tubing. This "boronizing" process increases the hardness of the inner surface of the tubing, allowing the tubing to be deployed in particularly corrosive oil field environments.

19. After being subjected to the boronizing treatment in Canada, the tubing—remains finished Range 2 API 5CT J-55 steel tubing. It remains identifiable as the same Range 2 API 5CT J-55 steel tubing which was exported to ETI in Canada for alteration treatments before being returned to the United States.

20. The returned boronized tubing at issue was imported into the U.S. by MLM, and sold by MLM to its U.S. customers, as finished Range 2 API 5CT J-55 steel tubing, having been merely advanced in value and improved in condition in Canada by ETI.

21. Upon importation into the United States, MLM asserted the goods qualify for treatment under subheading 9802.00.50, HTSUS, as "Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means: Articles exported for repairs or alterations: Other [than pursuant to a warranty]." Goods so classified when returned from having been repaired and altered while in Canada, are entitled to enter the United States free of duty.

22. CBP liquidated the entries without allowing subheading 9802.00.50, HTSUS, treatment, assessing Section 232 duties on the full value of the merchandise, which is of U.S. origin.

## COUNT I

23. Paragraphs 1 through 22 of this Complaint are incorporated by reference as though fully set forth herein.

24. The J-55 tubing that MLM's Canadian vendor, ETI, altered in Canada before returning to the U.S. were finished articles of commerce, suitable for us as <u>finished Range 2 API 5CT J-55 steel tubing</u> at the time of their exportation from the United States.

25. ETI's Canadian operations altered the finished Range 2 API 5CT J-55 steel tubing, increasing the hardness of the tubing's inner diameter while maintaining, and not destroying, the essential characteristics which qualify it for use as finished Range 2 API 5CT J-55 steel tubing.

26. The operations performed in Canada did not create a new article of commerce, distinct from that which was exported. The Canadian processing merely advanced the value and improved the condition of the finished Range 2 API 5CT J-55 steel tubing.

27. Goods secondarily classified under subheading 9802.00.50, HTSUS, when returned to the U.S., are ordinarily subject to "a duty upon the value of the repairs or alterations (*see* U.S.

Note 3 of this subchapter)." Subheading 9802.00.50, HTSUS. U.S. Note 3(a) to HTS Chapter 98, Subpart II, which is the best evidence of its contents, states:

> 3. Articles repaired, altered, processed or otherwise changed in condition abroad.-- The following provisions apply only to subheadings 9802.00.40 through 9802.00.60, inclusive:
>
>> (a) The value of repairs, alterations, processing or other change in condition outside the United States shall be:
>>
>>> (i) The cost to the importer of such change; or
>>>
>>> (ii) If no charge is made, the value of such change,
>>
>> as set out in the invoice and entry papers; except that, if the appraiser concludes that the amount so set out does not represent a reasonable cost or value, then the value of the change shall be determined in accordance with section 402 of the Tariff Act of 1930, as amended.

28.     U.S. Note 3(a) to HTS Chapter 98, Subpart II, which is the best evidence of its contents, states:

> (d) For the purposes of subheadings 9802.00.40 and 9802.00.50, the rates of duty in the "Special" subcolumn of column 1 followed by the symbol "CA" or "MX" in parentheses shall apply to any goods which are returned to the United States after having been repaired or altered in Canada or in Mexico, respectively, whether or not such goods are goods of Canada or goods of Mexico under the terms of general note 12 to the tariff schedule.

\*          \*          \*

29.     The regulatory criteria that must be satisfied to qualify for repair and alteration treatment, when goods are sent to a NAFTA country, are set out in Section 181.64 of the CBP Regulations, which is the best evidence of its contents and which states in relevant part:

> a)  General. This section sets forth the rules which apply for purposes of obtaining duty-free or reduced-duty treatment on goods returned after repair or alteration in Canada or Mexico as provided for in subheadings 9802.00.40 and 9802.00.50, HTSUS. Goods returned after having been repaired or altered in Mexico, whether or not pursuant to a warranty, and goods returned after having been repaired or altered in Canada pursuant to a warranty, are eligible for duty-free treatment, provided that the requirements of this section are met. Goods

> returned after having been repaired or altered in Canada other than pursuant to a warranty are subject to duty upon the value of the repairs or alterations using the applicable duty rate under the United States-Canada Free-Trade Agreement (*see* § 10.301 of this chapter), provided that the requirements of this section are met. For purposes of this section, "repairs or alterations" means restoration, addition, renovation, redyeing, cleaning, resterilizing, or other treatment which does not destroy the essential characteristics of, or create a new or commercially different good from, the good exported from the United States.
>
> \* \* \*
>
> b) Goods not eligible for duty-free or reduced-duty treatment after repair or alteration. The duty-free or reduced-duty treatment referred to in paragraph (a) of this section shall not apply to goods which, in their condition as exported from the United States to Canada or Mexico, are incomplete for their intended use and for which the processing operation performed in Canada or Mexico constitutes an operation that is performed as a matter of course in the preparation or manufacture of finished goods.

30. Accordingly, for an article to be considered "repaired or altered" under subheading 9802.00.50, HTSUS, and the corresponding regulation, 19 C.F.R. § 181.64, the following elements must be satisfied:

    1. The article must be a finished good, complete for its intended use before exportation from the United States.

    2. While abroad, the article may be subject to "any process of manufacture or other means" including restoration, addition, renovation, redyeing, cleaning, resterilizing, or other treatments.

    3. The operations performed abroad must not destroy the essential characteristics of, or create a new or commercially different good from, the good exported from the United States.

31. Plaintiff's imported boronized steel tubing qualifies for duty free entry under subheading 9802.00.50, HTSUS.

## COUNT II

32. Paragraphs 1 through 31 of this Complaint are incorporated by reference as though fully set forth herein.

33. ETI's U.S. vendors either (i) wholly manufactured the subject steel tubing through a melt-and-pour process; or (ii) imported into the U.S. "green tubes" from foreign producers and then substantially transformed the "green tubes" into finished Range 2 API 5CT J-55 steel tubing suitable for use in OCTG applications. Therefore, the finished Range 2 API 5CT J-55 steel tubing exported to Canada for alteration treatment by ETI is a U.S.-originating product.

34. ETI's Canadian processing does not substantially transform the finished Range 2 API 5CT J-55 steel tubing into goods having a different country of origin, and the goods remain of U.S.-origin when reimported into the U.S. by MLM.

35. Section 232 duties cannot be assessed or collected on goods of U.S. origin. As the subject steel tubing is of U.S. origin, all duties paid by Plaintiff on the subject entries must be refunded.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MLM respectfully requests that the Court enter judgment in its favor, directing the appropriate Customs officer to reliquidate Plaintiff's entries as U.S. origin goods without assessment of Section 232 duties, or pursuant to subheading 9802.00.50, HTSUS, and to refund all duties, taxes and fees, with interest as provided by law, and to grant MLM such other and additional relief as the Court deems just and appropriate under the circumstances.

        Respectfully submitted,

        NEVILLE PETERSON LLP

        <u>/s/ John M. Peterson</u>
           John M. Peterson
           Patrick B. Klein
           One Exchange Plaza
           55 Broadway, Suite 2602
           New York, NY 10006
           (212) 635-2730
           jpeterson@npwny.com

        <u>/s/ Richard F. O'Neill</u>
           Richard F. O'Neill
           701 Fifth Ave., Ste. 4200-2159
           Seattle, WA 98104-4089
           (206) 905-3648
           roneill@npwny.com

Dated:   September 23, 2022