UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, JUDGE

_____
                                                          :
MAPLE LEAF MARKETING, INC.                                :
                                                          :
          Plaintiff/Counterclaim-Defendant,               :          Court No. 20-03839
                                                          :
                    v.                                    :
                                                          :
UNITED STATES,                                            :
                                                          :
          Defendant/Counterclaim-Plaintiff.               :
_____           :


**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF/COUNTERCLAIM-DEFENDANT'S
<u>MOTION TO DISMISS COUNTERCLAIM</u>**

## TABLE OF CONTENTS

**PAGE**

BACKGROUND ........................................................................................................ 1

SUMMARY OF ARGUMENT ................................................................................. 5

ARGUMENT ............................................................................................................ 6

    I.     STANDARD OF REVIEW ............................................................... 6

    II.    THE GOVERNMENT'S COUNTERCLAIM IS NOT BARRED BY THE FINALITY OF LIQUIDATION BECAUSE LIQUIDATION IS NOT FINAL.... 8

        **A.**    The Entries Covering The Subject Merchandise Are Not Subject To Section 1514(a) Finality............................................................ 8

        **B.**    The Proper Classification Of The Merchandise Is Before The Court ...... 13

        **C.**    The Purpose Of 28 U.S.C. § 1583 Is To Allow A Counterclaim ............. 14

    III.   THE GOVERNMENT'S COUNTERCLAIM STATES A CAUSE OF ACTION ............................................................................................ 19

CONCLUSION........................................................................................................ 22

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

*A&D Auto Sales, Inc. v. United States,*
   748 F.3d 1142 (Fed. Cir. 2014) ............................................................................... 8

*Am. Permac, Inc. v. United States,*
   24 CIT 933 (Ct. Int'l Trade 2000) ......................................................................... 15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................................7, 19

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................................................7, 19

*Brother Int'l Corp. v. United States,*
   248 F. Supp. 2d 1224 (Ct. Int'l Trade 2002) ....................................................... 16

*Chrysler Corp. v. United States,*
   601 F. Supp. 2d 1347 (Ct. Int'l Trade 2009) ....................................................... 13

*Confederación de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States,*
   459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) ......................................................... 7

*Constant v. Advanced Micro–Devices, Inc.,*
   848 F.2d 1560 (Fed. Cir. 1998) ............................................................................. 7

*Cormorant Shipholding Corp. v. United States,*
   617 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) ................................................... 15, 16

*Cyber Power Systems (USA) Inc. v. United States,*
   586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022) .............................................5, 11, 15

*Dollar Trading Corp. v. United States,*
   67 Cust. Ct. 308 (1971)........................................................................................ 11

*Eastalco Aluminum Co. v. U.S.,*
   10 CIT 622, 1986 WL 10513 (Ct. Int'l Trade 1986) ........................................... 14

*Eastalco Aluminum Co. v. U.S.,*
   916 F.2d 1568 (Fed. Cir. 1990) ................................................................. 14, 15, 16

*Eastalco Aluminum Co. v. U.S.,*
   995 F.2d 201 (Fed. Cir. 1993) ........................................................................ 14, 16

*Eastalco Aluminum Co. v. United States*,
  726 F. Supp. 1342 (Ct. Int'l Trade 1989) *aff'd*,
  916 F.2d 1568 (Fed. Cir. 1990) ...................................................................14, 15, 16

*Eastalco Aluminum Co. v. U.S.*,
  10 CIT 622, 622, 1986 WL 10513 (Ct. Int'l Trade 1986), *aff'd*
  916 F.2d 1568 (Fed. Cir. 1990) ..............................................................................14

*Estado de Sinaloa, A.C. v. United States*,
  459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) ...........................................................7

*Gould, Inc. v. United States*,
  935 F.2d 1271 (Fed.Cir.1991) ..................................................................................8

*Jarvis Clark, Inc. v. United State*s,
  733 F.2d 878 (Fed. Cir. 1984) ................................................................................14

*Macclenny Prods.* v. *United States*,
  963 F. Supp. 2d 1348 (Ct. Int'l Trade 2014) .........................................................16

*Maple Leaf Mktg., Inc. v. United States*,
  528 F. Supp. 3d 1365 (Ct. Int'l Trade 2021) ...........................................................2

*Schlumberger Tech. Corp. v. United States*,
  91 F. Supp. 3d 1304 (Ct. Int'l Trade 2015), *aff'd*
  845 F.3d 1158 (Fed. Cir. 2017) ..............................................................................10

*Second Nature Designs, Ltd. v. United States*,
  586 F. Supp. 3d 1334 (Ct. Int'l Trade 2022) .....................................................5, 10

*Tikal Distributing Corp. v. United States*,
  93 F. Supp. 2d 1269 (Ct. Int'l Trade 2000) ...........................................................16

*Tomoegawa USA, Inc. v. United States*,
  12 CIT 112 (1988) *aff'd in part, vacated in part, per curiam*
  861 F.2d 1275 (Fed. Cir. 1988) ..............................................................................10

*Tomoegawa (U.S.A.), Inc. v. U.S.*,
  763 F. Supp. 614 (Ct. Int'l Trade 1991) .................................................................15

*United States v. Ford Motor Co.*,
  29 CIT 209 (2005) ..................................................................................................6, 7

*United States v. Islip*,
  22 CIT 852, 18 F.Supp.2d 1047 (1998) ....................................................................8

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, JUDGE

_____
                                  :

MAPLE LEAF MARKETING, INC.         :

                                    :

       Plaintiff/Counterclaim-Defendant,   :        Court No. 20-03839

                                    :

                   v.                   :

                                    :

UNITED STATES,                       :

                                    :

       Defendant/Counterclaim-Plaintiff.   :
_____:

**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM-DEFENDANT'S <u>MOTION TO DISMISS COUNTERCLAIM</u>**

      Defendant/Counterclaim-Plaintiff, the United States (the Government), respectfully submits this memorandum of law in opposition to Plaintiff/Counterclaim-Defendant Maple Leaf Marketing, Inc.'s (Maple Leaf) motion to dismiss defendant's counterclaim.  For the reasons set forth in our memorandum, Maple Leaf's motion to dismiss should be denied.

## <u>BACKGROUND</u>

      This action concerns twenty-two entries of steel tubes made at the Port of Sweetgrass, Montana from March through May 2019.  Amended Summons (Dkt. No. 20).  Maple Leaf asserts that the steel tubing is comprised of U.S. origin steel, which is later altered in Canada by Endurance Technologies Inc. (ETI) located in Alberta, Canada.  Compl. ¶ 11 (Dkt. No. 10).  All the subject entries were liquidated with duties assessed pursuant to subheading 9903.80.01, Harmonized Tariff Schedule of the United Stated (HTSUS), which provides for a 25 percent *ad valorem* national security tariff imposed under Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862 (Section 232).  Many of the subject entries contained multiple

entry summary lines, and therefore subheading 9903.80.01, HTSUS, was applied to imported merchandise variously classified under two different subheadings of Chapter 73. *Maple Leaf Mktg., Inc. v. United States*, 528 F. Supp. 3d 1365, 1371 (Ct. Int'l Trade 2021) (quoting Note 16 to Subchapter III of Chapter 99, added by proclamation 9705, providing at subsection (b) that "[t]he rates of duty set forth in [sub]heading 9903.80.01 apply to all imported products of iron or steel classifiable in the provisions enumerated in this subdivision [including, *inter alia*,]: … (iii) tubes, pipes and hollow profiles provided for in heading 7304, or 7306 . . . ")).  In this case, the merchandise in the subject entries for which Section 232 duties were assessed at liquidation was variously classified in one of two underlying subheadings of heading 7304 or heading 7306, HTSUS – either under subheading 7304.29.50, HTSUS, as "[t]ubes, pipes and hollow profiles, seamless, of iron (other than cast iron) or steel: . . . [c]asing, tubing and drill pipe, of a kind used in drilling for oil or gas: . . . [o]ther: . . . [t]ubing: [o]f iron or nonalloy steel," or under subheading 7306.29.60, HTSUS, as "[o]ther tubes, pipes and hollow profiles (for example, open seamed or welded, riveted or similarly closed), of iron or steel: . . . [l]ine pipe of a kind used for oil or gas pipelines: . . . [o]ther . . . [t]ubing: [o]f iron or nonalloy steel."

At entry, Maple Leaf incorrectly claimed the benefit of secondary classification under subheading 9802.00.50, HTSUS, which provides for "[a]rticles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means: [a]rticles exported for repairs or alterations: . . . [o]ther," and CBP subsequently auto-liquidated the entries under that subheading.  Thus, Maple Leaf incorrectly paid Section 232 duties only on what was presumably the value of the repair and alteration performed in Canada rather than the full entered value of the goods.

On July 8, 2020, Maple Leaf filed two protests covering the entries listed in the Amended Summons, Protest Nos. 3310-20-100114 and 3310-20-100115, making several arguments:

1) The imported merchandise in the entries covered by these protests is properly classified under subheading 7304.29.61, HTSUS, not subheadings 7304.29.50 or 7306.29.60, HTSUS.

2) Alternatively, the imported merchandise qualifies for repair and alteration treatment under subheading 9802.00.50, HTSUS, and therefore, cannot be subject to Section 232 duties.

3) Goods qualifying for repair and alteration under subheading 9802.00.50, HTSUS, and altered in a NAFTA member country, are dutiable pursuant to NAFTA Annex 307.1.

4) The imported merchandise is covered by an exclusion from Section 232 duties that was determined and announced by the Department of Commerce (Commerce).

Protest Nos. 3310-20-100114 (Dkt No. 7-1 at 1) and 3310-20-100115 (Dkt No. 7-2 at 1).

On October 30, 2020, CBP denied both protests, stating that it did not have enough information to decide the underlying classification of the merchandise at the subheading level within Chapter 73 of the HTSUS; that the merchandise does not qualify for subheading 9802.00.50, HTSUS, as the processing in Canada exceeds the scope of the "alteration" provision; and, finally, that CBP was unable to verify the claimed exclusion announced by Commerce, and Maple Leaf had not provided information as to which line item the exclusion applied.  Protest Nos. 3310-20-100114 (Dkt No. 7-1 at 2) and 3310-20-100115 (Dkt No. 7-2 at 2).

On November 17, 2020, Maple Leaf filed its summons in this Court contesting the denied protests.  Maple Leaf stated that the issue common to the denied protests is "[w]hether, and in

what amount, section 232 duties should be assessed on goods entered from Canada and eligible for secondary classification under subheading 9802.00.50, HTSUS." Dkt. No. 1.

On September 23, 2022, Maple Leaf filed its complaint. Dkt. No. 10.

On December 16, 2022, Maple Leaf moved to amend its summons, because "duties owed to the Government were not paid on five of the entries at issue prior to the filing of the summons, pursuant to 28 U.S.C. § 2637(a)." Dkt. No. 18 at 1.

On December 19, 2002, the Court granted Maple Leaf's motion, and the Amended Summons was filed that same date. Dkt. No. 20. Thus, twenty-two entries covered by Protest Nos. 3310-20-100114 and 3310-20-100115 remain at issue here.

On January 20, 2023, the Government timely filed its answer, which included the assertion of a counterclaim to reclassify the merchandise without the benefit of subheading 9802.00.50, HTSUS, and by consequence to recover Section 232 duties, pursuant to Rule 13(a)[1] of the Rules of the U.S. Court of International Trade (USCIT), 19 U.S.C. §§ 1503, 1505(b) & (c), the tariff code (19 U.S.C. § 1202 *et seq.*), and 28 U.S.C. §§ 1582(3), 1583, 2643(b) & (c). Dkt. No. 21.

On February 10, 2023, Maple Leaf filed the instant motion to dismiss the Government's counterclaim for failure to state a claim on which relief can be granted, and to redesignate the counterclaim as a defense. Dkt. No. 22.

---

[1] USCIT R. 13(a) provides:

    A pleading must state as a counterclaim any claim that at the time of its service the pleader has against an opposing party if the claim: (1) involves the imported merchandise that is the subject matter of the civil action, or (2) is to recover on a bond or customs duties relating to such merchandise.

## SUMMARY OF ARGUMENT

As a preliminary matter, we acknowledge that the Court's recent decisions in *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334 (Ct. Int'l Trade 2022) and *Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022), held that the Government lacks a cause of action to assert counterclaims for underpaid duty on the same merchandise for which plaintiff claims a duty refund.  Although the Court in both cases redenominated the Government's counterclaims as defenses, we assert a counterclaim in this case, asking the Court to order CBP to reliquidate the subject entries with bills (rather than refunds as claimed by Maple Leaf), to preserve our right to recover, should this legal question be appealed here.

Notwithstanding, we request that Maple Leaf's motion to dismiss be denied.  Maple Leaf does not seek dismissal on the basis that this Court lacks jurisdiction to hear the Government's counterclaim.  Instead, Maple Leaf claims only that the Government has failed to state a claim for which relief can be granted because (i) such a claim is barred by the statutory finality of liquidation under set out in 19 U.S.C. § 1514(a); and (ii) there is no source or basis for the Government's counterclaim cause of action.

Maple Leaf is incorrect on both points.  The allegations provided in the Government's timely-filed counterclaim are sufficient to state a claim for the increase of duties that would result from this Court's determination that the imported merchandise that is the subject of Maple Leaf's action should be reliquidated without the benefit of secondary classification under subheading 9802.00.50, HTSUS.  Indeed, CBP is charged with enforcing the tariff in accordance with its terms, which includes collecting the proper amount of duties based on the correct classification of imported merchandise.  *See* the HTSUS, codified at 19 U.S.C. § 1202 *et seq*.; 19

U.S.C. § 1514(a) (when a USCIT judgment or order becomes final, the papers transmitted by CBP for the Court file and a copy of the judgment or order are returned to CBP to take action accordingly).  As part of its administrative responsibilities, "CBP shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation."  19 U.S.C. § 1505(b).  Where, as here, the correctness of duty liability as assessed upon liquidation is the subject a civil action commenced in the USCIT, the Government is specifically authorized to "counterclaim … to recover … customs duties relating to such merchandise," and the Court is specifically authorized to "render judgment upon any [such] counterclaim."  28 U.S.C. § 1583. Taken together, these statutory provisions provide the grounds for our counterclaim.

Further, as reflected in CBP's denial of Maple Leaf's protests, CBP determined that the proper classification of the subject imported merchandise is subheading 7306.29.60, HTSUS, or 7304.29.50, HTSUS, and it is secondarily classified under 9903.80.01, HTSUS, not 9802.00.50, HTSUS.  Although CBP did not liquidate the subject merchandise under this subheading, finality under section 1514(a) did not attach as to the classification of the subject merchandise because Maple Leaf protested the classification of, and rate and amount of duties assessed, on the subject merchandise, the protest was denied, and this action commenced.  By satisfying these statutory prerequisites, Maple Leaf avoided section 1514(a) finality of the liquidation as to all persons, including the Government.  Because the proper classification of the goods is an open issue, the Government is not foreclosed by section 1514(a) finality from filing a counterclaim.

## ARGUMENT

### IV.    STANDARD OF REVIEW

"The Court may dismiss a counterclaim for failure to state a claim only 'where it appears beyond doubt that plaintiff can prove no set of facts which will entitle him to relief." *United*

*States v. Ford Motor Co.*, 29 CIT 209, 211 (2005) (quoting *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1565 (Fed. Cir. 1998)).  "Moreover, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." *Ford*, 29 CIT at 211.  Thus, the same analysis applicable to a motion to dismiss a complaint is applicable to one seeking to dismiss a counterclaim.

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A counterclaim has facial plausibility when it "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).  "While a [counterclaim] . . . does not need detailed factual allegations, *ibid*, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545; *see also Iqbal*, 556 U.S. at 662 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  The [counterclaim] must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Determining whether the factual pleading standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court considers the allegations in the [counterclaim] as well as documents "'incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Confederación de Asociaciones Agrícolas del Estado de Sinaloa, A.C. v. United States*, 459 F. Supp. 3d 1354, 1361

(Ct. Int'l Trade 2020) (quoting *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)).  Finally, the Court must view all well-pleaded facts in the light most favorable to the non-moving party.  *See United States v. Islip*, 22 CIT 852, 854, 18 F.Supp.2d 1047, 1051 (1998) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)).

## V.  THE GOVERNMENT'S COUNTERCLAIM IS NOT BARRED BY THE FINALITY OF LIQUIDATION BECAUSE LIQUIDATION IS NOT FINAL

Maple Leaf's motion does not claim that the Court lacks jurisdiction to hear the Government's counterclaim or that the counterclaim was untimely.  Instead, Maple Leaf limits its motion to dismiss solely to USCIT Rule 12(b)(6), contending that the Government failed "to state a claim on which relief can be granted."  Pl.'s Mot. to Dismiss at 1 (Dkt. No. 22).  Maple Leaf further contends that the Government "cannot plausibly plead a cause of action against Plaintiff to recover additional duties, since its proposed counterclaim is barred by the doctrine of finality of liquidation," pursuant to 19 U.S.C. § 1514(a).  *Id.* at 9.  Maple Leaf asserts that liquidations and reliquidations become final unless "a private party invokes the only available exceptions to the finality of liquidation."  *Id.* at 12.  Thus, Maple Leaf's motion rests on two arguments: (i) the Government's request for classification under subheading 7306.29.60, HTSUS, or 7304.29.50, HTSUS, and secondary classification under 9903.80.01, HTSUS, with its increase in duties owed is barred by statutory finality under 19 U.S.C. § 1514(a); and (ii) the Government has identified no statutory basis for its counterclaim cause of action.  Pl.'s Mot. to Dismiss at 9-13, 15, 20.  For the reasons that follow, Maple Leaf is incorrect.

### D.  The Entries Covering The Subject Merchandise Are Not Subject To Section 1514(a) Finality

In pertinent part, section 1514(a) provides:

> Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties),

8

section 1520 of this title (relating to refunds), and section 6501 of
title 26 (but only with respect to taxes imposed under chapters 51
and 52 of such title), any clerical error, mistake of fact, or other
inadvertence, whether or not resulting from or contained in an
electronic transmission, adverse to the importer, in any entry,
liquidation, or reliquidation, and, decisions of the Customs Service,
including the legality of all orders and findings entering into the
same, as to—

(2) the classification and rate and amount of duties chargeable;

shall be final and conclusive upon **all persons (including the
United States and any officer thereof) unless a protest is filed
in accordance with this section, or unless a civil action
contesting the denial of a protest, in whole or in part, is
commenced** in the United States Court of International Trade in
accordance with chapter 169 of title 28 within the time prescribed
by section 2636 of that title. When a judgment or order of the
United States Court of International Trade has become final, the
papers transmitted shall be returned, together with a copy of the
judgment or order to the Customs Service, which shall take action
accordingly.

(emphasis added).

Based on the plain statutory language, the final and conclusive effect of section 1514(a)
will not apply to any person, **including the Government**, where a protest has been filed and an
action commenced in the USCIT.  As stated by Maple Leaf in its summons, the issue raised by
the protests was "[w]hether, and in what amount, section 232 duties should be assessed on goods
entered from Canada and eligible for secondary classification under subheading 9802.00.50,
HTSUS."  Amended Summons (Dkt. No. 20).  Both protests were denied on October 30, 2020.
*Id.* at 2.  By commencing this action on November 17, 2020, Maple Leaf fulfilled the statutory
requirements to avoid finality from attaching to Customs' denial of its protests disputing the
"section 232 duties . . .  assessed" on the imported merchandise at issue.

Maple Leaf's discussion of exceptions to finality of liquidation is inapposite and does not
affect the Government's counterclaim.  *See* Pl.'s Mot. to Dismiss at 9-13.  Based on the terms of

section 1514, the filing of a protest or a civil action contesting the denial of a protest prevents the liquidation from being "final and conclusive upon all persons (including the United States and any officer thereof)[.]"  19 U.S.C. § 1514(b).  The Government does not claim that it is entitled to file a protest or that section 1581(a) provides the jurisdiction for our cause of action.  Instead, the protest and commencement of this action are the predicates needed by an importer to dispute a decision by CBP.  And when that importer satisfies those predicates, finality does not attach to the liquidation, *see* section 1514, thereby allowing the Government to file a counterclaim.  *See* USCIT Rule 13(a); 28 U.S.C. § 1583.

Contrary to Maple Leaf's arguments, the Court in *Second Nature* stated that the text of 19 U.S.C. § 1514(a) provides that CBP's liquidation (or reliquidation) is final *except* when "a civil action contesting the denial of a protest" is brought before this court."  *Id.* at 1339-40.  Maple Leaf nevertheless contends that the exception does not apply to the Government.  Pl.'s Mot. to Dismiss at 15.  Maple Leaf's interpretation of the statutory text is thus contrary to that elucidated by the Court in *Second Nature*, which holds that if the Government's proposed classification relates to the same entries as the protest, it is not barred by the finality of liquidation.  *Second Nature*, 586 F. Supp. 3d at 1339-40.  In *Second Nature*, the Court explained that "although the Government has no cause of action for the assertion of a counterclaim for increased duties, **it is not barred from otherwise arguing for a different classification at a higher duty rate**."  *Id.* at 1339 (emphasis added), citing *Tomoegawa USA, Inc. v. United States*, 12 CIT 112, 113, 122 (1988), *aff'd in part, vacated in part, per curiam* 861 F.2d 1275 (Fed. Cir. 1988) (mem.), *remanded to* 15 CIT 162 (1991) (adopting the Government's alternative classifications, proposed in light of new information initially unavailable to CBP); *Schlumberger Tech. Corp. v. United States*, 91 F. Supp. 3d 1304, 1323 (Ct. Int'l Trade 2015), *aff'd* 845 F.3d 1158 (Fed. Cir. 2017)

(acknowledging the Government's assertion of alternative classifications in addition to CBP's classification on appeal); *Dollar Trading Corp. v. United States*, 67 Cust. Ct. 308, 315–16 (1971) (noting that the presumption of correctness does not extend to the Government's assertion of two additional possible classifications for the subject merchandise).  Similarly, in *Cyber Power Systems (USA) Inc. v. United States*, the Court stated that the Government "is not barred from arguing for a different classification at a higher duty rate."  *Cyber Power*, 586 F. Supp. 3d at 1334 n.6.

Nevertheless, Maple Leaf seems to believe that the Government's ability to recover additional duties resulting from the Court's determination that the imported merchandise is subject to a classification with a higher duty rate is cut off, if CBP has not applied the higher rate during the 90-day reliquidation period provided in 19 U.S.C. § 1501.  Pl.'s Mot. to Dismiss at 11.  Such a theory is contrary to the plain meaning of 28 U.S.C. § 1583, which permits a counterclaim for additional duties associated with the imported merchandise that is the subject of the complaint:

> In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any **counterclaim**, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or **customs duties relating to such merchandise**.

28 U.S.C. § 1583 (emphasis added).  Further, such a theory would undermine the uniform and consistent application of the customs laws by allowing an importer to avoid paying increased duties that this Court determined to be due.

Finally, contrary to Maple Leaf's argument (Pl.'s Mot. to Dismiss at 13-18), and given the lack of finality as to the liquidation of the subject merchandise, the Government is not limited to seeking duties through an action under 28 U.S.C. § 1592(d).  As explained *infra*, one of the

reasons for allowing a counterclaim in a section 1581(a) action is to promote judicial efficiency. Requiring the Government to burden the Court with a section 1592(d) action involving the same merchandise when the vehicle of a counterclaim is available is contrary to congressional intent. If the Government's ability to assert a counterclaim for additional duties were limited solely to circumstances where the Government is otherwise authorized to commence a collection action pursuant to section 1592(d), as Maple Leaf suggests, then the Court's "exclusive jurisdiction to render judgment upon any counterclaim … to recover … customs duties relating to such merchandise" would be essentially toothless. 28 U.S.C. § 1583

The Court's jurisdiction over collection actions pursuant to section 1592(d) is provided by section 1582(3) ("The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States … to recover customs duties."), *see* H.R. Rep. 96-1235, at 37 (explaining that section 1582 was added to "permit the United States to commence a civil action … to recover customs duties"). In addition, section 1583 provides this Court with "exclusive jurisdiction to render judgment upon any counterclaim … to recover … customs duties relating to such merchandise" that is the subject of the action in which the counterclaim is asserted. *See* 28 U.S.C. § 1583; H.R. Rep. 96-1235, at 35-38 (explaining that section 1583 was enacted so that "it would be possible for the court to rule that a plaintiff should pay additional duties to the United States on the basis of the counterclaim asserted and proved by the United States," and that "[a]fter extensive discussion" of "the counterclaim provision," section 1583 was enacted "to authorize the assertion of any counterclaim" that meets the condition that "limit[s] the government's counterclaim to 'the imported merchandise'" that is the subject of the pending action, which limitation "strikes a compromise between the need of the government to recover the proper amount of import duties

and the exposure of the importer to additional duty liability").  Thus, while the United States is authorized to commence its own collection action only where the statutory conditions under section 1592 are met, section 1583 *separately* provides the ability for this Court to consider a counterclaim for additional duties where the imported merchandise is already the subject of a pending action.

### E.  The Proper Classification Of The Merchandise Is Before The Court

The proper classification of the merchandise is squarely before the Court, both in the context of plaintiff's claims and the Government's counterclaim.  Because Maple Leaf's case challenges classification pursuant to review of a protest, the issue of classification cannot be final and conclusive against either party.  In its complaint, Maple Leaf asserts that Section 232 duties should not have been assessed against the subject merchandise because that merchandise satisfies the requirements of subheading 9802.00.50, HTSUS, which provides an exemption from Section 232 duties.  Subheading 9802.00.50, HTSUS, provides an exemption for "[a]rticles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means: [a]rticles exported for repairs or alterations:  . . . [o]ther."

To support its claim that these entries are exempt from Section 232 duties, Maple Leaf must establish by a preponderance of the evidence that the subject merchandise is classifiable in subheading 9802.00.50, HTSUS.  Maple Leaf cannot rest on CBP's liquidation, as entered by Maple Leaf under subheading 9802.00.50, HTSUS, as proof that such classification is correct.  Instead, to determine the proper classification of the merchandise, the Court conducts a *de novo* review.  *Chrysler Corp. v. United States*, 601 F. Supp. 2d 1347, 1350 (Ct. Int'l Trade 2009) (This Court "reviews Customs' protest decisions *de novo*.").

Maple Leaf likewise recognizes that "this Court has an obligation under *Jarvis Clark, Inc. v. United State*s, 733 F.2d 878 (Fed. Cir. 1984) to find the 'correct' result." Pl.'s Mot. to Dismiss at 17.[2] If, in reaching that correct result, the Court determines that a different classification is applicable, the Court has exclusive jurisdiction to consider a counterclaim asserted under 28 U.S.C. § 1583. By commencing a counterclaim consistent with USCIT Rule 13(a), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1583, the Government has protected its right to receive any increased duties, interest, and fees that may flow from the Court's decision.

## F. The Purpose Of 28 U.S.C. § 1583 Is To Allow A Counterclaim

This Court has previously recognized the Government's right to counterclaim. *Eastalco Aluminum Co. v. U.S.*, 10 CIT 622, 622, 1986 WL 10513, at *1 (Ct. Int'l Trade 1986), *aff'd*, 916 F.2d 1568 (Fed. Cir. 1990). In a subsequent decision in a related case, the Federal Circuit vacated an order enjoining the same importer from voluntarily dismissing its suspended cases after the Government's counterclaim under 28 U.S.C. § 1583 for a higher duty classification was sustained in the test case, because the Government had not asserted its counterclaim in the suspended cases. *Eastalco Aluminum Co. v. U.S.*, 995 F.2d 201 (Fed. Cir. 1993). By way of background, the Federal Circuit explained that:

> After filing its answer, the government moved to amend the answer in order to allege, by way of counterclaim, that the imported bricks were classifiable under TSUS Item 517.91, a broad provision covering "other" articles of carbon or graphite. That provision carries a higher rate of duty than Customs' initial classification under TSUS Item 517.61.
>
> On October 19, 1989, the trial court entered its final decision and judgment in the test case. *Eastalco Aluminum Co. v. United States*, 726 F. Supp. 1342 (Ct. Int'l Trade 1989). The trial court rejected Eastalco's contention that the merchandise was duty-free and

---

[2] Maple Leaf argues that *Jarvis Clark* does not confer a cause of action on the Government. Pl.'s Mot. to Dismiss at 17. As discussed *infra*, our counterclaim arises under 28 U.S.C. § 1583.

> determined that the merchandise should have been classified under
> TSUS Item 517.91, thus sustaining the government's counterclaim.
> *Id.* at 1343.  This court affirmed on October 18, 1990.  *Eastalco
> Aluminum Co. v. United States*, 916 F.2d 1568 (Fed. Cir. 1990).

*Eastalco Aluminum*, 995 F.2d at 202-03.

In *Cyber Power*, this Court acknowledged that "Congress appears to have believed that

28 U.S.C. § 1583 would provide the United States with the ability to assert counterclaims arguing

for a higher rate of duty." *Cyber Power*, 586 F. Supp. 3d at 1332-33 (quoting H.R. Rep. No. 96-

1235, at 36).  But the Court nevertheless held that "although Congress may have intended

Section 1583 to provide the United States with an avenue to assert counterclaims for higher rates

of duty, Congress only provided the U.S. Court of International Trade with jurisdiction to hear

such counterclaims, to the extent such claims are properly brought as counterclaims." *Id.* at 1333.

The Government in *Cyber Power* did not provide a full analysis of "whether section 1583

provides a cause of action" – the Court held that the Government "waived its opportunity to

present argument on this issue" – but the Court nevertheless concluded that "the plain meaning of

Section 1583 is clear and the statute is purely jurisdictional." *Id.* at n.14.  In this case the

Government has not waived any arguments, and we now demonstrate, through the statute,

legislative history, and case law,[3] that Section 1583 provides *both* the cause of action *and* the

---

[3] *See Tomoegawa (U.S.A.), Inc. v. U.S.*, 763 F. Supp. 614, 621 (Ct. Int'l Trade 1991),
("The legislative history of the Customs Courts Act of 1980 … makes clear that Congress
intended the provision [enacted in 28 U.S.C. § 1583] to authorize the court to enter judgment on a
counterclaim *so as to enable the Government to recover 'the proper amount of import duties.'*")
(emphasis added, citations omitted); *Am. Permac, Inc. v. United States*, 24 CIT 933, 938 (Ct. Int'l
Trade 2000) (granting the Government's counterclaims for additional duties sought "[p]ursuant to
28 U.S.C. § 1583," and ordering plaintiff to pay the additional duties to the Government);
*Cormorant Shipholding Corp. v. United States*, 617 F. Supp. 2d 1270, 1276 n.17 (Ct. Int'l Trade
2009) ("Prior to the adoption of section 1583, if the court found Customs' appraisement to be
incorrect, the court could not uphold a different appraised value claimed by the Government.
Rather, the court could only dismiss the action, without requiring the plaintiff to pay any
additional duties.  Section 1583 remedied this problem and *permits the government to "assert[ ] a
claim* that would allow the court to make the proper determination and accordingly would enable

jurisdictional basis for the Government's counterclaim for additional duties on the imported merchandise.

Our counterclaim asserts that, based on CBP's enforcement of the HTSUS, we are entitled to receive additional duties should the Court agree that the subject is not entitled to the benefit of secondary classification under 9802.00.50, HTSUS.  Our counterclaim is consistent with the will of Congress.  Historically, when the Court determined that the proper classification of imported merchandise called for an increase in duties, "the court could only dismiss the action, without requiring the plaintiff to pay any additional duties."  *Cormorant Shipholding Corp. v. United States*, 617 F. Supp. 2d 1270, 1276 n.17 (Ct. Int'l Trade 2009).  "Section 1583 remedied this problem and permits the [G]overnment to 'assert[] a claim that would allow the court to make the proper determination and accordingly would enable the Government to collect the full amount of duties.'  H.R. Rep. No. 96–1235, at 36 (1980)."  *Id.; see also Tikal Distributing Corp. v. United States*, 93 F. Supp. 2d 1269, 1275 n.4 (Ct. Int'l Trade 2000).

Indeed, the legislative history behind section 1583 explains:

> The United States may defend the action either by claiming that the
> original valuation is correct or by asserting in the alternative that if

---

the Government to collect the full amount of duties.") (emphasis added, quoting H.R. Rep. No. 96–1235, at 36); *Brother Int'l Corp. v. United States*, 248 F. Supp. 2d 1224 (Ct. Int'l Trade 2002); *Macclenny Prods.* v. *United States*, 963 F. Supp. 2d 1348 (Ct. Int'l Trade 2014) (denying the government's counterclaims for additional duties on the merits but never expressing any doubt that the government had a cause of action to make the counterclaims for additional duties on the same imported merchandise that was the subject of the importer's pending action); *Eastalco Aluminum Co. v. United States*, 995 F.2d 201 (Fed. Cir. 1993) (noting that the Government's counterclaim under 28 U.S.C. § 1583 for a higher duty classification was sustained in a test case by the CIT and the Court of Appeals for the Federal Circuit, and suggesting that the suspended cases could be voluntarily dismissed only because the Government had not asserted its counterclaim under 28 U.S.C. § 1583); *Eastalco Aluminum Co. v. United States*, 726 F. Supp. 1342, 1343 (Ct. Int'l Trade 1989) (ordering judgment for the government on its counterclaim, and ordering the Customs Service "to reliquidate the [subject entries accordingly and] to collect such additional duties as are owing, and such interest as provided by law"), *aff'd*, 916 F.2d 1568 (Fed. Cir. 1990).

the original valuation is incorrect, the goods should be valued at an amount higher than that claimed by the plaintiff.  In cases in which the plaintiff has demonstrated that the original valuation is erroneous, but where the Government has proven a higher valuation, the Customs Court has not required the plaintiff to pay the higher duties.  In those instances, the court has dismissed the action.  However, all subsequent imports of the same goods are valued at the higher tariff rate proved by the Government at trial.  Under the provision proposed in H.R. 6394, it would be possible for the court to rule that a plaintiff should pay additional duties to the United States on the basis of the counterclaim asserted and proved by the United States.  That provision would allow the counterclaim to be asserted not only with regard to the particular matter which gave rise to the civil action being litigated but also as to all other civil actions pending in the Court of International Trade involving import transactions by the same plaintiff.  Several witnesses strongly recommended the deletion of this provision from the legislation.  They claimed that the counterclaim provision would permit the Government to exact additional duties from importers months after the importer has moved his goods into the stream of commerce at a price that accounts for the duties assessed by the Customs Service.

H.R. Rep. No. 96–1235, at 35 (1980).  Although the legislative history speaks in terms of a valuation case, its analysis applies with equal force to a classification case.  Indeed, what was debated as "the counterclaim provision" in section 1583 was understood to apply equally to valuation or classification cases.  Some "witnesses contended that the government has ample opportunity prior to and after liquidation to reassess the initial valuation *or classification* and should not be accorded still another opportunity to collect a higher duty on goods long released into the stream of commerce, particularly after the government's rights under section 501 of the Tariff Act of 1930 [19 U.S.C. § 1501] have lapsed." *Id.* at 36 (emphasis added).  This is the same argument that plaintiff is now attempting to resurrect here.  "After extensive discussion," the provision was enacted with "an amendment *limiting the government's counterclaim* to 'the imported merchandise'[, which] strikes a compromise between the need of the government to recover the proper amount of import duties and the exposure of the importer to additional

17

liability." *Id.* at 36-37 (emphasis added)[4].  Thus, by enacting section 1583, Congress provided an additional basis for our counterclaim.

The congressional scheme permitting the Government to recover additional duties, interest, and fees through the vehicle of a counterclaim is further supported by 28 U.S.C. § 2643(b), which permits the Court to enter a money judgment "for or against the United States or any other party in any counterclaim, cross-claim, or third-party action under section 1583 of this title."  Under the initial draft of section 1583, which was not adopted, the Court could have ruled that the plaintiff had to pay the United States additional duties not only as to the subject matter of the action, but also for other actions in the USCIT involving the plaintiff's import transactions. H.R. Rep. No. 96-1235 at 35.  The Association of the Customs Bar argued that this provision would "have a chilling effect on the commencement of litigation in the Court of International Trade" because litigants would be exposed to liability, especially if the Government were raising challenges to importations that were not the subject of plaintiff's complaint.  *Id.* at 35-36.  Others argued that the Government has "ample opportunity prior to and after liquidation to reassess the initial valuation or classification and should not be accorded still another opportunity."  *Id.* at 36.  However, representatives of the importing community "agreed that limiting the counterclaim to 'the imported merchandise' would be a reasonable limitation."  *Id.*

---

[4]  There was additional testimony from the Department of Justice "that the right to recover customs duties should apply equally to the importer and the government," such that "if the amount of duties due the government is truly more than the actual assessment, then that amount should be paid," "*the government should not be precluded from asserting a claim* that would allow the court to make the proper determination and accordingly would enable the government to collect the full amount of duties," as well as a concession by the American Importers Association that *limiting the counterclaim* to 'the imported merchandise' would be a reasonable limitation" to address its concern regarding '*permitting the Government to raise counterclaims* on suspended cases."  *Id.*

Moreover, further testimony provided that:

> there is nothing extraordinary about litigants and their lawyers having to balance the likely benefits of proposed litigation against the possibility of counterclaims.
>
> On the one hand, by allowing some counterclaims involving the same importer which we do propose be done, you're in the position of consolidating litigation, getting disputes between the same parties resolved more quickly. The fact that somebody has to consider whether they are subject to claims when they bring suit is the kind of judgment lawyers are called upon to make in a whole host of occasions when they have to advise clients whether it's prudent or not prudent to come forward and bring litigation.

*Id.* The same concerns Maple Leaf raises here were considered by Congress in narrowly

tailoring section 1583. All importers should be aware that by protesting and bringing an action,

they face the potential of a counterclaim from the Government. Thus, whether to protest and

commence a court action is simply a decision based on weighing the costs and benefits of doing

so. All importers are similarly situated in doing such an analysis.

## VI.   THE GOVERNMENT'S COUNTERCLAIM STATES A CAUSE OF ACTION

Maple Leaf contends that its motion to dismiss our counterclaim should be granted

because the counterclaim failed to state a claim for which relief can be granted. Pl.'s Mot. to

Dismiss at 20. Maple Leaf is wrong.

To survive a motion to dismiss, "a [counterclaim] must contain sufficient factual matter,

accepted as true, to state a claim of relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

(internal quotations omitted). In other words, the factual allegations must be sufficient "to raise a

right to relief above the speculative level on the assumption that all the allegations in the

[counterclaim] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Our counterclaim

satisfies the *Iqbal-Twombly* standard because it provides enough factual matter to establish our

right to relief: correctly reclassifying the merchandise without the benefit of secondary

classification under subheading 9802.00.50, HTSUS, and, by consequence, collection of the appropriate Section 232 duties.

Under the customs laws, the Government is entitled to duties owed on imported merchandise after liquidation or reliquidation.  *See* the HTSUS, codified at 19 U.S.C. § 1202 *et seq*.; 19 U.S.C. § 1505(b); 28 U.S.C. § 1583.  The proper amount of duties is determined by the rate of duty associated with the provision that correctly describes the imported merchandise. Section 1505(b) authorizes CBP to "collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation."  19 U.S.C. § 1505(b).  If the Court determines that the correct classification is different from and has a higher duty rate than the one under which the goods were classified at liquidation, then, consistent with section 1514(a), CBP is charged with enforcing the tariff correctly and receiving the duties it was entitled to, had the goods been properly classified when entered by the importer.  19 U.S.C. § 1514(a) ("When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.").

Construing the Government's factual allegations as true and viewing them in the light most favorable to the Government (*i.e.*, non-moving party), the Court should deny Maple Leaf's motion to dismiss.  These allegations state a plausible claim for relief: the Court's obligation to find the correct classification and the Government's attendant right to collect Section 232 duties on the entered value of the merchandise pursuant to its correct classification without the benefit of secondary classification under subheading 9802.00.50, HTSUS, is consistent with 28 U.S.C. § 1583, which provides for the Court with exclusive jurisdiction over a counterclaim to recover

customs duties relating to the subject merchandise and should also be understood to provide a

cause of action.  Therefore, the grounds for our claim reside in the classification itself and the

duty rate it carries that is applicable to the imported merchandise, and in our charge to collect any

additional duties due upon reliquidation based on our counterclaim and this Court's review of the

correct classification.  28 U.S.C. § 1583.

Thus, the question here turns on whether the Government is entitled to receive additional

duties if the Court agrees that the subject merchandise is not secondarily classifiable under

subheading 9802.00.50, HTSUS.  If subheading 9802.00.50, HTSUS, is not applicable, then

proper enforcement of the tariff would call for CBP to apply that primary classification and its

associated duty rate to the subject merchandise.  *See* 19 U.S.C. § 1514(a) ("When a judgment or

order of the United States Court of International Trade has become final, the papers transmitted

shall be returned, together with a copy of the judgment or order to the Customs Service, which

shall take action accordingly.")  Our counterclaim asserts that, based on the correct classification

of the subject merchandise and our enforcement of the HTSUS, we are entitled to receive these

additional duties.  As such, the counterclaim has stated a claim upon which relief can be granted.

Finally, the Government's counterclaim in this case preserves the Government's rights in

that event that Maple Leaf decides to voluntarily dismiss its claims.  But for the Government's

counterclaim, this case could be dismissed by Maple Leaf.  The Government's counterclaim is

therefore needed to preserve the Government's rights and remedies under those circumstances.

## **CONCLUSION**

For these reasons, Maple Leaf's motion to dismiss the counterclaim should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Aimee Lee
AIMEE LEE
Assistant Director
International Trade Field Office

/s/ Guy Eddon
GUY EDDON
Trial Attorney
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9232
*Attorneys for Defendant*

Dated: March 31, 2023