**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLARE R. KELLY, JUDGE**
-------------------------------------------------------------------- X
MAPLE LEAF MARKETING, INC,                       :
                                                 :
       **Plaintiff,**                         :
                                                 :
       *v.*                                  :            **No. 20-cv-3839**
                                                 :
UNITED STATES,                                   :
                                                 :
       **Defendant.**                        :
-------------------------------------------------------------------- X


### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

NEVILLE PETERSON LLP

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com
*Counsel for Plaintiff*

Dated:  May 12, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 3

I.     The Finality of Liquidation Under 19 U.S.C. § 1514(a) Bars Defendant's Counterclaim .................................................................................................................. 4

       A.     Overview of Statutory Liquidation Process. ........................................... 4

       B.     Finality of Liquidation, and Limited Exceptions Thereto, 19 U.S.C. § 1514(a) ..... 6

       C.     The Government's Counterclaim is Not Authorized by 19 U.S.C. § 1514(a). ........ 7

II.    Congress, by Granting Limited Counterclaim Jurisdiction to This Court Pursuant to 28 U.S.C. § 1583, Did Not Create a Cause of Action for the Government. ............................ 8

       A.     The Government Fails to Provide a Statutory Basis for its Counterclaim Cause of Action. ............................................................................ 10

III.   The Government's Counterclaim Violates the Constitution. ............................................. 13

# TABLE OF AUTHORITIES

**Cases**

*3V Inc. v. United States*, 23 C.I.T. 1047 (1999)................................................................ 8

*Apple Inc. v. United States*, 375 F. Supp. 3d 1288 (Ct. Int'l Tr. 2019) ........................... 8

*C.J. Tower & Sons v. United States*, 499 F.2d 1277 (C.C.P.A. 1974)............................... 4

*Chamberlain Group Inc. v. Skylink Techs. Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) ........... 9

*Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022) ................................................................................................ 3, 11, 12, 16

*Eastalco Aluminum Co. v. United States*, 10 C.I.T. 622 (1986) ..................................... 12

*Eastalco Aluminum Co. v. United States,* 13 C.I.T. 864 (1989) ..................................... 13

*Eastalco Aluminum Co. v. United States*, 916 F.2d 1568 (Fed Cir. 1990). .................. 13

*Gibbons v. Ogden*, 22 U.S. 1 (1824).............................................................................. 15

*Gray Tool Co. v. United States*, 6 C.I.T. 333 (1983). ...................................................... 6

*Hayburn's Case*, 2 U.S. 409 (1792)................................................................................ 15

*Hernandez v. Mesa,* 140 S. Ct. 735 (2020)...................................................................... 8

*Hitachi Home Elecs. v. United States*, 661 F.3d 1343 (Fed. Cir. 2011) ......................... 7

*In re Petition of Beck*, 526 F. Supp. 2d 1291 (S.D. Fla. 2007) ............................... 15, 16

*J. M. Huber Corp. v. United States*, 27 Fed. Cl. 659 (1993). .......................................... 9

*Jarvis Clark Inc. v. United States*, 733 F.2d 878 (Fed. Cir. 1984) ........................ 11, 16

*Jesner v. Arab Bank PLC*, 138 S. Ct. 1386 (2018) ......................................................... 8

*Morrison v. Olson*, 487 U.S. 654 (1988). ....................................................................... 15

*Muskrat v. United States*, 219 U.S. 346 (1911) ............................................................. 15

*Shoshone Indian Tribe v. United States*, 364 F.3d 1339 (Fed. Cir. 2004)...................... 9

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)............................................................. 10

*Tomoegawa (U.S.A.), Inc. v. U.S.*, 15 C.I.T. 182 (1991) .............................................. 12

*United States v. Esso Standard Oil Co.*, 42 C.C.P.A. 144 (1955) ................................... 9

*United States v. Ferreira*, 54 U.S. 40 (1852)................................................................. 15

*United States v. Nitek Electronics, Inc.*, 844 F.3d 1378 (Fed. Cir. 2016)........................ 3

*W.A. Fenton & Co. v. United States*, 55 C.C.P.A. 54 (1968) .......................................... 9

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .................................................................. 8, 14

**Statutes**

19 U.S.C. § 1202........................................................................................................ 11, 14

19 U.S.C. § 1484.............................................................................................................. 4

19 U.S.C. § 1500........................................................................................................... 5, 9

19 U.S.C. § 1501........................................................................................................ 5, 7, 9

19 U.S.C. § 1504........................................................................................................ 5, 16

19 U.S.C. § 1514(a) ................................................................................................. passim

19 U.S.C. § 1515......................................................................................................... 9, 11

19 U.S.C. § 1592...................................................................................................... 10, 14

28 U.S.C. § 1581............................................................................................. 8, 11, 13, 17

28 U.S.C. § 1583.................................................................................................... passim

28 U.S.C. § 2639.............................................................................................................. 5

28 U.S.C. § 2640............................................................................................................. 10

28 U.S.C. § 2643.................................................................................................. 11, 12, 16

46 U.S.C. § 80102........................................................................................................... 15

**Other Authorities**

H.R. Rep. No. 96-1235, 96th Cong., 2d Sess., (1980).................................................................. 9

**Constitutional Provisions**

U.S. Const, art. III, § 1 ........................................................................................................... 15

U.S. Const. art. 1 § 8 cl. 1. ...................................................................................................... 14

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLARE R. KELLY, JUDGE**
-------------------------------------------------------------------- X
MAPLE LEAF MARKETING, INC,                         :
                                                   :
            Plaintiff,                             :
                                                   :
v.                                                 :          No. 20-cv-3839
                                                   :
UNITED STATES,                                     :
                                                   :
            Defendant.                             :
-------------------------------------------------------------------- X

### REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

In accordance with Rules 7 and 12 of the Rules of the United States Court of International Trade ("USCIT R."), Plaintiff, Maple Leaf Marketing, Inc. ("MLM"), submits this reply in support of its *Motion to Dismiss* the counterclaim pleaded by Defendant, United States, in this case. As discussed herein, Defendant has pointed to no statute or other authority granting it a cause of action to assert a claim to collect duties *in excess* of those assessed in final liquidation of Plaintiff's entries. Rather, Defendant has made the classic mistake of assuming that a grant of subject matter jurisdiction to this Court imbues it with a new, hitherto unknown, cause of action. As indicated herein, and in our initial Motion to Dismiss, it does not.

Nor does this Court have the power, pursuant to a counterclaim, or otherwise, to make an award of duties over and above the amount that U.S. Customs and Border Protection ("CBP") imposed in its final statutory assessment. Our Constitution forbids the Court from doing that. For a duty assessment to arise from judicial action or a judicial proceeding would amount to the Court imposing a tax solely based on judicial power—and this would violate Constitutional separation of powers principles and be in derogation of Congress' exclusive power to lay duties under Article I, Section 8 of the Constitution.

Yet, as Defendant lacks a cause of action, the Court may grant Plaintiff's motion to dismiss it without directly addressing the Constitutional issue.

## BACKGROUND

Plaintiff's imported merchandise at issue consists of a boronized (seamless or electric resistance welded ("ERW")) steel tubing product known as "EndurAlloy." The imported product is a U.S.-origin finished steel tubing product which was exported to Canada and altered by Endurance Technologies Inc. ("ETI"), of Alberta, using a chemical deposition process to harden the inner diameter of the tubing. On re-importation, Plaintiff entered the goods under subheading 9802.00.50 of the Harmonized Tariff Schedule of the United States ("HTSUS")—the identical subheading under which CBP liquidated a large group of entries at issue in this case.      After CBP denied its protest, plaintiff timely commenced this action challenging CBP's refusal to apply the secondary classification under temporary subheading 9903.88.33, HTSUS.

This action involves two groups of entries. CBP classified one group of entries in liquidation under subheading 9802.00.50. As to these "Group One" entries, Plaintiff did not protest the application of the secondary classification, but protested merely that CBP had incorrectly calculated the cost or value of the alterations performed in Canada.

For the second group of entries, CBP denied subheading 9802.00.50 treatment in liquidation, appraised the goods, and assessed duties on their full "transaction value." For these "Group Two" entries, plaintiff's protest contended that the goods were eligible for the subheading 9802.00.50 classification, and that duties should only be assessed on the cost or value of the alterations performed in Canada.

Defendant's counterclaim relates to the first group of entries only. For these entries, CBP wishes to set aside its final liquidation under subheading 9802.00.50, HTSUS, and, presumably,

have this Court conduct an appraisement of the goods and assess duties on their full transaction value, recovering the difference from Plaintiff and awarding it to Customs.

## **ARGUMENT**

Plaintiff's Motion to Dismiss the counterclaim requests that the Government identify the statute(s) which grant it a cause of action to assert a counterclaim in this action. The Government's response (ECF 27), fails to provide a satisfactory answer.

The government posits that (i) since this Court has jurisdiction over counterclaims under 28 U.S.C. § 1583, this grant must have implicitly created a cause of action for the Government; and (ii) the enactment of 28 U.S.C. § 1583 somehow altered the "finality of liquidation" set forth in 19 U.S.C. §1514(a). Both propositions are legally unsound.

A counterclaim is a procedural device that allows a party with a cause of action to assert it against another party. FRCP 13 differentiates between "compulsory" counterclaims arising from the same facts or occurrences as the main action (FRCP 13(a)) and "permissive" counterclaims arising from different transactions (FRCP 13(b)). This Court's rules do not contain a similar distinction in USCIT R. 13 because this Court's counterclaim jurisdiction is essentially limited to "compulsory" type counterclaims (citing *United States v. Nitek Electronics, Inc*., 844 F.3d 1378, 1383 (Fed. Cir. 2016)).

28 U.S.C. § 1583 grants the United States Court of International Trade jurisdiction over certain counterclaims. However, this grant of jurisdiction does not, by itself, create a cause of action for the Government to assess duties in excess of the liquidated final amounts. *Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1333 (Ct. Int'l Trade 2022). Here, Plaintiff's Motion to Dismiss the counterclaim challenges the Government to identify the statute conferring a cause of action against the Plaintiff. The Government has failed to do so, instead

arguing that the grant of counterclaim jurisdiction to this Court somehow bestows a cause of action to recover duties in excess of liquidated and final assessments, which cause of action may be asserted by counterclaim. This argument lacks legal support.

Furthermore, the "finality of liquidation" provision in 19 U.S.C. § 1514(a) limits the Government's ability to seek additional duties once the liquidation is deemed final. *C.J. Tower & Sons v. United States*, 499 F.2d 1277, 1280 (C.C.P.A. 1974). Section 1514(a) underscores that the Government does not possess a cause of action to seek additional duties beyond what was determined at liquidation.

As the Government has not identified a statute that provides a cause of action for seeking additional duties beyond the final liquidated amounts, and considering the limitations imposed by 19 U.S.C. § 1514(a), the Plaintiff's Motion should be granted, and the counterclaim dismissed.

I.     **The Finality of Liquidation Under 19 U.S.C. § 1514(a) Bars Defendant's Counterclaim**

Plaintiff's *Motion to Dismiss* highlights that the Tariff Act of 1930 establishes a comprehensive statutory framework for assessing duties on entries and contesting such assessments. This framework, existing long before the Customs Courts Act of 1980 imbued this Court with counterclaim jurisdiction, governs the liquidation process and the finality of liquidation.

A.     **Overview of Statutory Liquidation Process.**

An overview of the statutory liquidation process is provided below:

- 19 U.S.C. § 1484 requires importers to exercise reasonable care when filing an entry with CBP, describing the goods, and asserting their classification, appraised value, and country of origin.

- 19 U.S.C. § 1500 mandates that the appropriate Customs officer reviews the entry, makes a final determination regarding classification, appraisement, and duties, and "liquidates" the entry. "Liquidation" constitutes CBP's final determination regarding the assessment of duties on the entry, and carries a statutory presumption of correctness. *See* 28 U.S.C. § 2639(a)(1).

- 19 U.S.C. § 1504(a) directs CBP to liquidate entries within one year of the entry date, or else they are "deemed liquidated," while § 1504(b) permits extensions of up to three years in specific circumstances.[1]

- 19 U.S.C. § 1501 allows for voluntary "reliquidation" by CBP within 90 days of the original liquidation but prohibits changes to liquidation or reliquidation decisions after that time.[2]

---

[1] The specific circumstances where extensions may be allowed are when: "(1) the information needed for the proper appraisement or classification of the imported or withdrawn merchandise … or for ensuring compliance with applicable law, is not available to the Customs Service; or (2) the importer of record or drawback claimant, as the case may be, requests such extension and shows good cause therefor." 19 U.S.C. § 1504(b).

[2] 19 U.S.C. § 1501, provides:

**Sec. 1501. Voluntary reliquidations by Customs Service**

A liquidation made in accordance with section 1500 or 1504 of this title or any reliquidation thereof made in accordance with this section may be reliquidated in any respect by the Customs Service, notwithstanding the filing of a protest, within ninety days from the date on which notice of the original liquidation is given or transmitted to the importer, his consignee or agent. Notice of such reliquidation shall be given or transmitted in the manner prescribed with respect to original liquidations under section 1500(e) of this title.

To be clear, after at least 90 days have elapsed from the liquidation or reliquidation of an entry, CBP is barred from changing its liquidation/reliquidation decision.

**B.      Finality of Liquidation, and Limited Exceptions Thereto, 19 U.S.C. § 1514(a)**

Section 514(a) of the Tariff Act establishes the finality of liquidation and its exceptions. This provision ensures that the liquidation process remains stable and predictable for importers. The two exceptions provided by the statute are limited in scope, and neither permits the government to increase duty assessments or request the Court to do so.

The Government contends that it is not bound by the "finality of liquidation" rule in Section 514(a) of the Tariff Act. However, this statute provides only two exceptions to the finality of liquidation, neither of which allows the Government to increase duty assessments or request the Court to do so.

Section 514(a) is designed exclusively for correcting determinations adverse to the importer. The purpose of the statute is to protect the interests of importers by allowing for the correction of errors or mistakes that may have resulted in unfavorable treatment. It is not intended as a means for the Government to rectify actions that may be detrimental to CBP. This distinction emphasizes that the finality of liquidation is meant to safeguard importers from arbitrary, capricious or tardy actions by the Government.

The filing of a protest does not delay the finality of liquidation; it challenges the final liquidation, and only with respect to the specific category or categories of 19 U.S.C. § 1514(a) decisions protested. *See Gray Tool Co. v. United States*, 6 C.I.T. 333, 334 (1983). It is a challenge available only to the importer, The liquidation remains final and unassailable as to all other decisions merged into the liquidation, preventing the Government from making broad changes adverse to the importer[3].

---

[3] Similarly, if the importer subsequently detects an unfavorable aspect of the liquidation decision that it failed to timely protest, it is without recourse.

The Government's argument that an importer's filing of a protest liberates CBP from the finality of liquidation, allowing it to take any action regarding the liquidated entry, is contrary to the statutory scheme. If this interpretation were valid, it would effectively render the finality of liquidation *meaningless* and expose importers to the possibility of unlimited changes to their liquidation decisions, undermining the stability and predictability of the import process[4].

Filing a protest under 19 U.S.C. § 1514(a) requires CBP to review the protest and either allow or deny it in whole or in part, but it does not authorize CBP to set aside the liquidation to make additional assessments when the § 1501 reliquidation period has expired: The statute explicitly states that CBP must review the protest and decide whether to allow or deny it in whole or in part. The statutory language does not grant CBP the authority to set aside the liquidation to impose additional assessments after the 90-day period for voluntary reliquidation under 19 U.S.C. § 1501 has lapsed. The limitation on liquidation in § 1514(a) is an instrument of repose.

### C.     The Government's Counterclaim is Not Authorized by 19 U.S.C. § 1514(a).

The Government has failed to provide a valid legal basis for its counterclaim, as it does not arise from 19 U.S.C. § 1514(a) or any exceptions to the finality of liquidation stipulated within the statute. Furthermore, the Government has not offered any precedent or examples where such counterclaims for additional duties have been permitted. This lack of support underscores the Government's misinterpretation of the statute and its intent.

The statute does not empower the Government to seek additional duties. The language of 19 U.S.C. § 1514(a) and its exceptions do not grant the Government any authority to pursue

---

[4] Were the Government's view correct, the agency could issue a new liquidation or reliquidate while a protest is pending (which may be a period of several years, as CBP is under no obligation to decide a protest within a given time, *see Hitachi Home Elecs. v. United States*, 661 F.3d 1343 (Fed. Cir. 2011), or even after litigation to challenge a denied protest is commenced in this Court.

additional duties beyond the liquidation or reliquidation process. Instead, the statute's focus is on protecting the interests of the importer and providing a stable, predictable system for duty assessments.

This Court's jurisdiction under 28 U.S.C. § 1581(a) is limited. The CIT's § 1581(a) jurisdiction is restricted to determining whether the importer is entitled to a refund of duties paid, as demonstrated in cases such as *3V Inc. v. United States*, 23 C.I.T. 1047, 1049-52 (1999), and *Apple Inc. v. United States*, 375 F. Supp. 3d 1288 (Ct. Int'l Tr. 2019), aff'd, 964 F.3d 1087 (Fed Cir. 2020). These cases further establish that the Government does not have the authority to seek additional duties through a counterclaim.

The Government's attempt to use 19 U.S.C. § 1514(a) as a basis for its proposed counterclaim cause of action is misplaced, as the statute is not designed to serve as a vehicle for the Government to seek additional duties. Instead, its purpose is to provide importers with the means to correct determinations that are adverse to their interests, ensuring a fair and balanced system for duty assessments.

## II.   Congress, by Granting Limited Counterclaim Jurisdiction to This Court Pursuant to 28 U.S.C. § 1583, Did Not Create a Cause of Action for the Government.

The Defendant appears to assume that Congress, in granting limited counterclaim jurisdiction to this Court through 28 U.S.C. § 1583, intended to create an implied cause of action allowing the Government to bring a counterclaim to assess duties beyond those imposed at liquidation. However, as previously mentioned, the Supreme Court has consistently cautioned against inferring a cause of action from a grant of jurisdiction to a court (*see Hernandez v. Mesa,* 140 S. Ct. 735, 742 (2020); *Jesner v. Arab Bank PLC*, 138 S. Ct. 1386, 1402 (2018)). To imply a cause of action not explicitly created by Congress raises serious separation of powers concerns. (*see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)).

The fact that this Court resolves tariff classification issues on a *de novo* record—a matter of scope-of-review—does not bear on whether the Government has a cause of action to demand duties greater than those assessed upon liquidation. Although some members of Congress may have believed that granting counterclaim jurisdiction to this Court provided a basis for the Government to assert a claim allowing the Court to impose more duties than those assessed at liquidation (*see* Def. Br. at 12; H.R. Rep. No. 96-1235, 96th Cong., 2d Sess., at 36 (1980)), this does not change the language of the statute providing for finality of liquidation in 19 U.S.C. § 1514(a), which bars the current counterclaim. Nor does it expand the exceptions to finality of liquidation contained in that statute[5]. It is a fundamental principle that Congress' intent must first be discerned by examining the language of the statute itself (*see e.g., Shoshone Indian Tribe v. United States*, 364 F.3d 1339 (Fed. Cir. 2004)). When the language of the statute is plain, it is inappropriate to turn to legislative history (*see also Chamberlain Group Inc. v. Skylink Techs. Inc*., 381 F.3d 1178 (Fed. Cir. 2004); *W.A. Fenton & Co. v. United States*, 55 C.C.P.A. 54 (1968); *United States v. Esso Standard Oil Co*., 42 C.C.P.A. 144 (1955)). Specifically, taxation matters—including the assessment of Customs duties—are governed by statute, and statutes relating to taxation must be interpreted to give effect to their plainest reasonable meaning. *See J. M. Huber Corp. v. United States*, 27 Fed. Cl. 659 (1993).

The Government's argument is inconsistent with the clear statutory direction set out in 19 U.S.C. §§ 1500, 1501, 1514, and 1515. Furthermore, it overlooks the fact that Congress has expressly provided only a single exception that would allow the Government to collect more duties

---

[5] It should be noted that the Customs Courts Act of 1980 was not considered by the tax-writing House Ways and Means Committee, which presumably would have had to authorize any new taxation or tax-collection provision.

than assessed in liquidation, as found in Section 592(d) of the Tariff Act of 1930, as amended (19

U.S.C. § 1592(d)):

> "*Notwithstanding section 1514 of this title*, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a) of this section, the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed"

19 U.S.C. § 1592(d) (emphasis added). The parties agree with Section 592(d) is not at issue here

ECF 27, Def's Br. at 11-13.

The Supreme Court has counseled strongly against inferior courts inferring causes of action

from grants of subject matter jurisdiction. Thus:

> To be sure, today's opinion does not itself precipitate a direct confrontation with Congress by creating a cause of action that Congress has not. But it invites precisely that action by the lower courts, even while recognizing (1) that **Congress understood the difference between granting jurisdiction and creating a federal cause of action** in 1789, *ante*, [Sosa v. Alvarez-Machain], 159 L. Ed. 2d, at 741-742, (2) that Congress understands that difference today, *ante*, at 728, 159 L. Ed. 2d, at 751, and (3) that the ATS [Alien Tort Statute] itself supplies only jurisdiction, *ante*, at 724, 159 L. Ed. 2d, at 748. In holding open the possibility that judges may create rights where Congress has not authorized them to do so, the Court countenances judicial occupation of a domain that belongs to the people's representatives. One does not need a crystal ball to predict that this occupation will not be long in coming, since the Court endorses the reasoning of "many of the courts and judges who faced the issue before it reached this Court," including the Second and Ninth Circuits. *Ante*, at 732, 159 L. Ed. 2d, at 753

*Sosa v. Alvarez-Machain*, 542 U.S. 692, 747 (2004).

### A.     The Government Fails to Provide a Statutory Basis for its Counterclaim Cause of Action.

The Government argues that the merchandise classification is the central issue in this case

and that the classification is subject to *de novo* review. ECF 27 at pp. 13-14. While the latter point

is accurate, the requirement for *de novo* review only determines the record on which the Court's

decision will be based. *See* 28 U.S.C. § 2640(a)(1).

The Government cites *Jarvis Clark Inc. v. United States*, 733 F.2d 878 (Fed. Cir. 1984) (ECF 27, p.14), emphasizing the Court's obligation to find the "correct" result through any means necessary. However, the *Jarvis Clark* decision merely acknowledges the power granted to the Court under 28 U.S.C. § 2643(b) to order a retrial, remand, or other proceedings to determine the correct outcome. It does not establish a cause of action that would allow the Court to award a judgment to the Government in a case brought under 28 U.S.C. § 1581(a). In fact, the CAFC's rehearing decision in *Jarvis Clark v. United States*, 739 F.2d 628, 629 (Fed. Cir. 1984), indicates that the Court's obligation to find the correct result is forward-looking:

> A judicial decision will now represent a statement of correct law, useful to future importers, rather than simply a narrow ruling based on the particular circumstances in the case.

(Emphasis added). The statutory basis for the Government's counterclaim cause of action remains elusive. On page 4 of its response to the Motion to Dismiss (ECF 27), the Government attempts to list the statutes that authorize its counterclaim:

> Rule 13(a)1 of the Rules of the U.S. Court of International Trade (USCIT), 19 U.S.C. §§ 1503, 1505(b) & (c), the tariff code (19 U.S.C. § 1202 et seq.), and 28 U.S.C. §§ 1582(3), 1583, 2643(b) & (c)

ECF 27, at 4.

As previously mentioned, in *Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022), the Court ruled that the Defendant lacked statutory authority to assert a counterclaim in a protest case such as this one. The Court found that no provision in 19 U.S.C. §§ 1202, 1503, 1514(a), or 28 U.S.C. § 1583 provided a statutory basis for the Defendant's asserted cause of action seeking to collect additional duties beyond those assessed in liquidation. The Defendant faces the same issue in this case.

11

Indeed, 28 U.S.C. § 1583 is a grant of jurisdiction to this Court and does not create a cause of action. Moreover, 28 U.S.C. § 2643(b) grants the Court specific powers when, based on the evidence presented, the Court cannot determine the correct decision in a case:

> (b). If the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision.

*Id.* This statute confers power on the Court, not a cause of action on the Government. Indeed, this power is granted to the Court only when it cannot discern the correct result based on the presented record. This stage has not been reached in the current case. However, the Government attempts to leverage this grant of power to the Court as the basis for a cause of action in its favor before the *de novo* proceedings mandated by the statute have even started. Such an overreach should not be permitted by the Court.

In addition, the Government cites *Eastalco Aluminum Co. v. United States*, 10 C.I.T. 622 (1986) for the notion that this "Court has previously recognized the Government's right to counterclaim." Def.'s Br. at 14. However, as was noted in *Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1333 (Ct. Int'l Trade 2022):

> Although this court has previously sanctioned the government's use of a counterclaim to assert a cause of action for reliquidation under a different classification, it has not squarely faced the question of the authority for such a claim.

The *Cyber Power* Court addressed squarely Tomoegawa *(U.S.A.), Inc. v. U.S.*, 15 C.I.T. 182 (1991), by saying: "[t]he issue of the government's statutory authority to assert a counterclaim does not appear to have been squarely before the court." *Cyber Power Systems (USA) Inc.*, *supra* at

12

1334. The scenario is the same for the *Eastalco* cases cited by the Government, which also provide no support for the statutory authority to assert a counterclaim.[6]

Finally, USCIT R. 13, cited by Defendant is a rule of this Court setting procedural rules for the filing and service of counterclaims. It is plainly not a source for any party's cause of action.

The Government has failed to establish a statutory basis for its counterclaim cause of action. The cited provisions either grant jurisdiction to the Court or confer specific powers under certain circumstances. These provisions do not create a cause of action allowing the Government to seek a judgment in a case filed under 28 U.S.C. § 1581(a). As a result, the Government's counterclaim lacks the necessary statutory foundation and should be dismissed.

## III.    The Government's Counterclaim Violates the Constitution.

The Government's counterclaim potentially infringes on the Constitution by asserting that its cause of action arises from the Plaintiff's decision to file an action contesting the denial of their protest. The Government's claim is that the Plaintiff's filing of this action grants the Government a previously non-existent cause of action to assert a counterclaim. This raises serious questions about the denial of equal protection under the law for those who exercise their right to seek judicial

---

[6] Contrary to the Government's assertions (Def.'s Br. at 14), the Government's "right to counterclaim" was not the issue in *Eastalco*, and notably, no money judgment was ever awarded on the Government's counterclaim. Initially, the Court found that it could not resolve the classification of the merchandise, *Eastalco Aluminum Co. v. United States*, 10 C.I.T. 622 (1986) and remanded the matter to Customs for further determination. After remand, the Court found that the goods were classifiable under a provision which the government had originally raised in a counterclaim, but there is no evidence indicated that the Court awarded judgment to the government on the counterclaim. *Eastalco Aluminum Co. v. United States,* 13 C.I.T. 864 (1989). Awarding judgment on a counterclaim would have required the court to determine the amount to be awarded the government, and enter a money judgment in the government's favor. There is no indication the Court did this. Similarly, the decision of the court of appeals contains no mention of a counterclaim judgment. *Eastalco Aluminum Co. v. United States*, 916 F.2d 1568 (Fed Cir. 1990). In essence, the court appears to have exercised its Jarvis Clark obligation to reach the correct result by adopting a classification which neither of the parties championed – a fairly routine occurrence in Customs litigation.

review of a property "taking." It would impose a burden of persons who exercise their statutory right to challenge a government taking (*i.e.,* exaction of duties) that is not imposed on persons who refrain from such challenges. Such an interpretation would have the "chilling effect" on filing of litigation in this Court the drafters of the Customs Courts Act sought to avoid.

Moreover, if the Court were to follow the Government's request and assess a duty that CBP, the taxing agency, did not assess, it would create significant separation of powers issues. Article I of the Constitution grants Congress the sole power to impose duties. U.S. Const. art. 1 § 8 cl. 1. Congress has exercised this power through the Tariff Act of 1930, as amended, which includes the HTSUS, 19 U.S.C. § 1202. Through the Tariff Act, Congress has delegated the authority to assess and collect duties to CBP, specifying the procedures to be followed in making such assessments and imposing clear limitations on CBP's powers.

By contesting CBP's assessments, which are "final," an importer must adhere to a carefully designed system of duty assessment under Congress' Article I powers. The Tariff Act does not grant the Government the right to recover duties that CBP declined or failed to assess in its final determination. Except for 19 U.S.C. § 1592(d), which the parties agree is not applicable here, the Government has not identified any other statute that does so. By requesting that the Judicial Branch assess duties for the first time, the Government would have this Court overstep its constitutional boundaries. As the Supreme Court has noted "when a party seeks to assert an implied cause of action under a Federal statute, separation of power are or should be the central analysis." *Ziglar v. Abbasi*, 137 S. Ct. 1843,1857 (2017).

The separation of powers analysis is clear. Under Article 1 of the Constitution, only Congress may pass a law assessing duties. Allowing this Court to impose a tax not levied by the taxing agency would violate this mandate by our nation's founders. "It is the governing principle

of our republic that our federal government is divided into three distinct and independent branches that abstain from and oppose encroachment on each other." *In re Petition of Beck*, 526 F. Supp. 2d 1291, 1301 (S.D. Fla. 2007) (citing *Hayburn's Case*, 2 U.S. 409, 410 (1792)).  "The judicial power of the United States shall be vested in one supreme Court and in such inferior Courts as Congress may from time to time ordain and establish."  *In re Petition of Beck*, 526 F. Supp. 2d 1302 (S.D. Fla. 2007); *see also* U.S. Const, art. III, § 1. The term "judicial power … is defined as the power to hear and determine those matters which affect life, liberty, or property, by declaring for the parties what the law is, and their rights in conformity thereto" *Id.* at 1302, *see also Muskrat v. United States*, 219 U.S. 346, 355 (1911). "Neither the legislative nor the executive branches, can constitutionally assign to the judicial any duties, but such as are properly judicial, and to be performed in a judicial manner." *In re Petition of Beck*, 526 F. Supp. 2d 1302 (S.D. Fla. 2007) (citing *Hayburn's Case*, 2 U.S. 409, 410 (1792)); *see also Morrison v. Olson*, 487 U.S. 654, 677 (1988). Stated differently, this Court is not a taxing body.

Separation of Powers issues arise "when a non-adjudicatory function that a court is charged to perform is not simply incidental to the judicial action, but is the very nature of the act that Congress has called upon the judiciary to perform." *In re Petition of Beck*, 526 F. Supp. 2d 1303 (S.D. Fla. 2007); s*ee, e.g., Hayburn's Case*, 2 U.S. at 409-10; *United States v. Ferreira*, 54 U.S. 40, 46-48 (1852). In *In re Petition of Beck* the Court ultimately held that it lacked the power to issue licenses, as directed under 46 U.S.C. § 80102.  The court said "the power to regulate the nation's waterways and pass laws circumscribing the commercial navigation thereof is within the exclusive purview of Congress." *In re Petition of Beck*, 526 F. Supp. 2d 1303 (S.D. Fla. 2007) (citing *Gibbons v. Ogden*, 22 U.S. 1 (1824)).

15

The Court ultimately held that "the issuance of licenses for salvaging … is not an action taken in furtherance of carrying out a judicial act or part of the Court's governance of the proceedings before it" because doing so "is a solitary executive action akin to an administrative proceeding." *In re Petition of Beck*, 526 F. Supp. 2d 1304 (S.D. Fla. 2007). CBP ask the Court to do the exact same thing in this case. The assessment of duties is a Congressional function under the Constitution. The executive, through CBP, has been delegated this authority. CBP's pleading of a counterclaim in this case is the same as asking a Court to undergo an administrative proceeding, which has been rejected by Courts. CBP has a process to extend liquidations in order to make proper assessments of duties under 19 U.S.C. § 1504. It is a violation of the U.S. Constitution for an agency to rely on a Court to fix what it failed to do administratively in dealing with is duties. The only case or controversy before this Court under Art. III of the Constitution is the denial of Plaintiff's protest.

Furthermore, the Court's obligation to find the correct answer in every case, as established in *Jarvis Clark*, does not grant it the power to assess duties not imposed by CBP during liquidation. The *Jarvis Clark* rule stems from the Court's 28 U.S.C. §2643(b) remand power, which allows the Court to order administrative or judicial procedures if it cannot determine the correct outcome. If it is determined through these proceedings that CBP assessed fewer duties than it should have, it simply means that there was no protestable decision "adverse to the importer" as per 19 U.S.C. § 1514(a). In such cases, the only appropriate action for the Court to take is to uphold the denial of the protest and dismiss the Plaintiff's case.

As previously noted in *Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1333 (Ct. Int'l Trade 2022), some members of Congress might have mistakenly believed that enacting the Customs Courts Act of 1980 created a cause of action for the Government to seek

more duties than those assessed in liquidation. However, the statute's language clearly indicates otherwise.

Concluding that the grant of counterclaim jurisdiction to this Court in 28 U.S.C. § 1583 did not create a new cause of action for the Government to seek duties in excess of those assessed during liquidation does not render Section 1583 meaningless. The Court's counterclaim jurisdiction could be exercised in various other situations. For example, if a plaintiff commenced an action under 28 U.S.C. § 1581(a) to contest the denial of its protest but had not paid all liquidated duties, taxes, and fees before proceeding to Court, the Government could file a motion for full or partial dismissal of the plaintiff's case and assert a counterclaim for the unpaid duties.

However, the Government's naked request that the Court exercise judicial power in disregard of the statutory finality imposed by 19 U.S.C. § 1514(a) and award additional duties without any statute granting the Government a cause of action for those duties would violate separation of powers principles.

The Government's counterclaim oversteps the carefully crafted Congressional scheme for duty assessment and seeks to have duties imposed, for the first time, by the Judicial Branch. This request violates the separation of powers principle, as it asks the Judicial Branch to assess duties that CBP declined or failed to assess in its final determination, without any statutory basis for doing so. Revenue law is entirely a creature of statute, originating under Article 1 of the Constitution. The Court's obligation to find the correct answer in every case does not grant it the power to impose duties not assessed by CBP during liquidation, and any attempt to do so would undermine the Constitution's separation of powers framework.

## <u>CONCLUSION</u>

CBP's assertion of a Counterclaim is inappropriate and should be dismissed by this Court. The Government does not possess a valid cause of action to support its counterclaim asserted against Plaintiff. As explained, the counterclaim also infringes upon the U.S. Constitution. Therefore, for the reasons stated above, Plaintiff respectfully requests that the Court approve the current motion and dismiss the Government's counterclaim.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  May 12, 2023

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLARE R. KELLY, JUDGE**
---------------------------------------------------------------------- X
MAPLE LEAF MARKETING, INC,                             :
                                                       :
      **Plaintiff,**                             :
                                                       :
      *v.*                                     :      **No. 20-cv-3839**
                                                       :
UNITED STATES,                                         :
                                                       :
      **Defendant.**                             :
---------------------------------------------------------------------- X

## <u>CERTIFICATE OF COMPLIANCE</u>

      I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Brief, relying

upon the word count feature of the word processing program used to prepare the Brief, certify that

it complies with the word count limitation under the Court's Standard Chambers Procedures and

contains 5,579 words.


                                     Respectfully submitted,


                                      /s/ Patrick B. Klein
                                      Patrick B. Klein